64 Cal.App.4th 1004 (1998)
STEPHEN R. GLASSER, Plaintiff and Appellant,
v.
EDWARD GLASSER. Defendant and Respondent.
Docket No. B113263.
Court of Appeals of California, Second District, Division Five.
June 11, 1998.
*1005 COUNSEL
William Patrick Patterson for Plaintiff and Appellant.
Edward Glasser, in pro. per., for Defendant and Respondent.
OPINION
GODOY PEREZ, J.
Plaintiff and appellant Stephen R. Glasser (Stephen), appeals from the judgment entered in favor of defendant and respondent Edward Glasser (Edward), upon Edward's motion for summary adjudication of issues. Stephen contends that the trial court's conclusion that he had no possessory interest in funds allegedly converted was incorrect. Edward contends the notice of appeal was not timely filed. We agree with Edward and dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND
The following facts are gleaned from the allegations of the unverified complaint and the declarations filed in support of and opposition to the motion. Edward and his daughter Crisanne Glasser (Crisanne),[1] who was born on January 11, 1993, reside in Woodbridge, New Jersey. Stephen and Edward are brothers and are the sons of Murray B. Glasser (Murray).
Sometime prior to 1994, Murray used his own funds to establish a Resource Management Account at Paine Webber in the names of Murray B. Glasser & Stephen R. Glasser & Edward H. Glasser as joint tenants with *1006 rights of survivorship (the Account).[2] Neither Stephen nor Edward ever deposited any of their own funds in the Account. During his lifetime, Murray was free to dispose of the funds in the Account as he wished. Murray moved from New Jersey to Santa Monica, California in 1986. Stephen and Gloria live in San Diego, California.
In August 1994, Murray suffered a heart attack. He was hospitalized in November 1994. Edward traveled to California to visit Murray in December of that year. During that visit, on December 12, 1994, Murray gave Edward two $10,000 checks; one made payable to Crisanne (check No. 209) and one made payable to Edward (check No. 208). Edward avers that these checks represented gifts from Murray to Edward and Crisanne. Edward wrote out the checks and Murray signed them. Edward accepted the checks but promised to keep the funds liquid in the event that Murray needed the money for his own use sometime in the future.
Edward maintains that Murray was entirely coherent and lucid at the time he gave this money to Edward and Crisanne. Gloria, however, claims that Murray was "very weak and appeared very disoriented" in the days before he died on December 23, 1994, although he had improved on December 17, 1994.
Edward determined that the Account balance on the date Murray died was $32,600, "which included an estimate of account appreciation." As joint tenants on the Account, Edward believed that he and Stephen were each entitled to 50 percent of that sum. Stephen does not dispute that, upon Murray's death, he and Edward were each entitled to 50 percent of the funds in the Account.
After Murray's death, Stephen informed Edward that he, Stephen, was going to dispose of Murray's personal property without consultation with Edward. Edward thereafter investigated the status of the Account and learned that a $10,000 check (check No. 226) had cleared the account six days after Murray's death. It was undisputed that Murray's name was signed to this check by Stephen and the check was cashed by Stephen. Concerned that Stephen was depleting the Account, Edward used check No. 211 to withdraw what he considered to be his $16,300 share of the Account.
Stephen filed his first amended complaint on October 31, 1995. Edward demurred to the entire complaint on the grounds that it failed to state facts sufficient to state a cause of action, was uncertain, and on the grounds that *1007 money cannot be the subject of a conversion. No copy of any order or ruling on the demurrer is included in the record on appeal, however, a copy of a second amended complaint without a file stamp is included therein. Stephen maintains in the second amended complaint that, at the time Edward wrote the first two $10,000 checks, Stephen was the owner of a remainder interest in the sums represented by those checks, and at the time Edward wrote the third check in the amount of $16,300, Stephen was also the owner of a remainder interest in that sum. The gravamen of Stephen's complaint seems to be that Edward took signed blank check Nos. 208, 209 and 211 from Murray, wrote them payable to himself and his daughter, and thereby converted the sums represented by those checks for his own use. Based upon the above facts, the second amended complaint alleged a cause of action for conversion as to each check (first, second and third causes of action), intentional infliction of emotional distress (fourth cause of action), and constructive fraud vis-a-vis each check (fifth, sixth and seventh causes of action).
Edward moved for summary judgment or alternatively summary adjudication of issues on or about October 9, 1996. According to the moving papers, there was no dispute that the $10,000 sums represented by check Nos. 208 and 209 were gifts from Murray to Edward and Crisanne, and that Edward was entitled to withdraw $16,300 from the Account after Murray's death because that sum represented his share of the balance in the Account at that time. Further, Edward maintained that Stephen had no standing to bring an action for conversion because he was not the owner of the funds inasmuch as he had never deposited any of his own funds into the Account, and Murray had the right, during his lifetime, to disburse the funds in any manner he wished. As for the emotional distress claim, Edward argued that the outrageous conduct on which it was premised was the alleged conversion, and because that claim had no merit, the emotional distress claim must also fail. Under the same reasoning, Edward argued, the constructive fraud claims must fail. Further, Edward asserted that there was no allegation or showing that Edward gained an advantage over Stephen by misleading him, an element of constructive fraud.
In opposition, Stephen argued that the motion should be denied because it was premature and that future discovery was likely to show that triable issues of material fact existed. Stephen also argued that the format of the moving papers did not comply with the local rules, the declarations supporting the motion were objectionable, and the issue of whether Stephen had a possessory interest in the funds had already been resolved adversely to Edward as a result of the denial of Edward's demurrer to the second *1008 amended complaint. Stephen, his wife Gloria, and a cousin, filed declarations in support of Stephen's opposition.[3]
Edward's motion for summary judgment, or in the alternative summary adjudication of issues, was heard on November 6, 1996. The order granting summary adjudication as to all issues was filed on December 6, 1996.[4] In that order, the court observed that it could not grant summary judgment because Edward had filed a cross-complaint.
Judgment on the order was entered on December 16, 1996, in favor of Edward and Crisanne and against Stephen on Stephen's second amended complaint. The judgment states that Edward dismissed without prejudice his cross-complaint against Stephen.
Appellant's appendix includes a proof of service of a document entitled "JUDGMENT [PROPOSED]," dated December 13, 1996. That proof of service follows the document entitled "Notice of Entry of Judgment" which is dated December 23, 1996, and file stamped December 27, 1996. It precedes a proof of service of a document entitled "Notice of Entry of Judgment and Judgment" dated December 23, 1996. Stephen's notice of appeal "from the judgment of the court in the above-noted matter dated December 16, 1996," was filed on June 12, 1997.
On July 21, 1997, Edward individually and as guardian for Crisanne moved to dismiss the appeal on the ground that Stephen had appealed from a nonappealable order. Edward argued that notice of entry of judgment had been served on Stephen on December 23, 1996, commencing the 60-day period in which a party may file notice of appeal. That period expired on or about February 21, 1997, but the notice of appeal was not filed until June 12, 1997.
Stephen opposed the motion on the grounds that "neither the judgment nor notice of entry of the same was mailed." In support of the opposition, Stephen's counsel avers that he never received the judgment, proposed judgment, or a notice of entry of judgment. Stephen's counsel also avers *1009 that, on prior occasions during the litigation, he did not receive discovery requests purportedly served upon him by Edward. The opposition papers point out that the proof of service on the judgment is dated December 13, 1996, but the judgment itself reflects a December 16, 1996, signature and date stamp. Stephen also argues that a proof of service attached to the notice of entry of judgment indicates that "it was mailed along with a copy of the `Judgment.' However, the moving papers do not include any such judgment attached to this proof of service."
On August 19, 1997, this court submitted the factual issue of "whether there was in fact service of the notice of entry of judgment" to the Honorable David D. Perez, for an evidentiary hearing. The evidentiary hearing took place on September 12, 1997. Stephen's counsel, William Patrick Patterson, testified. Harold Light, Edward's counsel, also testified. Bruce Gilbert, whose signature appears on the December 13, 1997, proof of service of the document entitled "[Proposed] Judgment" also testified. On September 15, 1997, Judge Perez, made the following factual finding on the issue: "[T]he Notice of Entry of Judgment was served on December 23, 1996, by having it placed in the U.S. Mail addressed to Wm. Patrick Patterson, 550 West `C' Street, Suite 1760, San Diego, California 92101."
On September 23, 1997, this court gave the parties permission to brief the issue of whether there was service of a notice of entry of judgment based on the findings of the Honorable David D. Perez. In a letter dated October 1, 1997, Edward, appearing in propria persona, reiterates his contention that the order was not appealable because the statutory time in which to file an appeal had expired. In a letter dated October 3, 1997, counsel for Stephen argues that the Evidence Code section 641 presumption that a letter correctly addressed and properly mailed is presumed to be received, is rebutted by counsel's claim that he did not receive it and that service of the judgment is defective because the proof of service does not adequately state the envelope was placed for collection and mailing on the date the proof of service was signed.
In an order dated November 12, 1997, this court ruled, "The questions of whether the appeal is to be dismissed will be resolved by the court at the time of the resolution of the merits of the appeal are addressed."

DISCUSSION

Motion to Dismiss
(1) Edward contends this court lacks jurisdiction to consider the appeal because the notice of appeal was not timely filed. We agree.
*1010 California Rules of Court, rule 2 provides in pertinent part as follows: "(a) [A] notice of appeal from a judgment shall be filed on or before the earliest of the following dates: ... (2) 60 days after the date of service of a document entitled `notice of entry' of judgment by any party upon the party filing the notice of appeal ... or (3) 180 days after the date of entry of the judgment." "The time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal." (Van Beurden Ins. Services, Inc. v. Customized Worldwide Weather Ins. Agency, Inc. (1997) 15 Cal.4th 51, 56 [61 Cal. Rptr.2d 166, 931 P.2d 344].)
The requirements to effect service by mail are set forth in Code of Civil Procedure section 1013. Subdivision (b) of that statute provides: "The copy of the notice or other paper served by mail pursuant to this chapter shall bear a notation of the date and place of mailing or be accompanied by an unsigned copy of the affidavit or certificate of mailing." Among other things, Code of Civil Procedure section 1013a, subdivision (3) requires that a proof of service show "(G) that the envelope was sealed and placed for collection and mailing on [the date the correspondence was placed for deposit in the United States Postal Service] following ordinary business practices."
Here, if the notice of entry of judgment was properly served on Stephen on December 23, 1996, California Rules of Court, rule 2 required that notice of appeal be filed on or before February 21, 1997. Judge Perez made the factual finding that notice of entry of judgment was served on December 23, 1996. Thus, the notice of appeal filed June 12, 1997, was untimely.
Stephen's apparent contention that the discrepancy between the date on which the judgment was filed with the superior court (December 16, 1997) and the date on which a document entitled "[Proposed] Judgment" was served (December 13, 1997), establishes that the judgment was never served is not persuasive. The most reasonable explanation is that the December 13, 1997, proof of service was attached to the proposed judgment served on all parties when it was submitted to the trial court for signature. The original of that document became the judgment only after it was signed by Judge Perez on December 16, 1997. The signed judgment was thereafter served on Stephen with the notice of entry of judgment on December 23, 1997. It was the service of that document which triggered the running of the 60-day period during which notice of appeal could be timely filed.
Also unpersuasive is Stephen's contention that the Evidence Code section 641 presumption has been rebutted by his counsel's claim that he did not receive the notice of entry of judgment. Whether that presumption has been *1011 rebutted is a question of fact to be resolved in the trial court. Although Judge Perez makes no specific finding on this issue, the only reasonable inference from his finding that the notice of entry of judgment was properly served is that he was not persuaded that the presumption had been rebutted. Further, from Judge Perez's finding that the notice was properly served, we infer that the contents of the proof of service substantially complied with the requirements of Code of Civil Procedure section 1013a, although it did not expressly state on its face that the envelope was sealed and placed for collection and mailing following ordinary business practices. (Code Civ. Proc., § 1013a, subd. (3).) Substantial evidence supports these findings and Stephen has shown no reason why they should be disturbed on appeal.

DISPOSITION
The appeal is dismissed.
Turner, P.J., and Grignon, J., concurred.
Appellant's petition for review by the Supreme Court was denied September 23, 1998.
NOTES
[1] Crisanne was named a defendant at some stage in this litigation, but was subsequently dismissed.
[2] Stephen's wife, Gloria Glasser (Gloria), averred that Murray asked her to explain a joint tenancy account sometime in 1990. Gloria was an attorney.
[3] Although not expressly labeled as filed in support of the opposition, the declaration is dated September 25, 1996, and hearing on the motion was set for October 9, 1996. From these facts, we deduce that it was filed in support of the opposition.
[4] Therein, the trial court stated that it found there to be no triable issue of material fact as to any cause of action. Specifically, as to the first, second and third causes of action, the court found appellant had "not shown any ownership interest" in the funds at issue, "or the right to maintain the action in his name and conversion does not lie for fungible moneys." As to the fourth cause of action, the court found "no proof of any conduct rising to the level of Intentional Infliction of Emotional Distress." As to the fifth, sixth and seventh causes of action, the court found "no basis for a claim of constructive fraud."